UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY D. JORLING, On Behalf of Himself and Others Similarly Situated, Plaintiff, | ) ) ) ) | |
| vs. | ) ) | 1:09-cv-798-TWP-TAB |
| ANTHEM, INC., (n/k/a Wellpoint, Inc.) and ANTHEM INSURANCE COMPANIES, INC., Defendant. | ) ) ) ) | |

**ENTRY DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

This matter is before the Court on Plaintiff, Jeffrey D. Jorling's Motion for Class Certification and for Appointment of Class Counsel. The proposed class would consist of roughly 200,000 former policyholders–or more precisely, former mutual members of Anthem Insurance who received shares of Anthem Inc. Common stock as compensation for the extinguishment of their mutual membership interests in connection with the demutualization of Anthem Insurance on November 2, 2001, and the communities comprised of them and their spouses, with certain exclusions. For the reasons set forth below, the Court **DENIES** the motion for class certification.

In June 2001, the board of directors of Anthem Insurance Companies, Inc. ("Anthem Insurance") approved a Plan of Conversion ("the Conversion Plan") to convert Anthem Insurance, then a mutual insurance company, into a new stock insurance company. Anthem Insurance would become a wholly-owned subsidiary of the new Anthem, Inc. The demutualization of a mutual insurance company transfers the ownership interests from the company's members, as defined by applicable state law and the company's governing documents, to the new stock insurance company's shareholders. In transferring that ownership interest, the members of the mutual company are entitled to be compensated. In the case at bar, Anthem Insurance compensated its eligible statutory members[1] with cash or stock in the new company, Anthem, Inc.

Members of Anthem Insurance had the option to choose cash or stock as their compensation, but the default option was cash for members who expressed no choice. To receive stock, members had to make an affirmative election. If no stock election was made by a member he or she would receive cash, so long as the proceeds from an initial public stock offering ("IPO") were sufficient to cover the necessary cash outlay.

One of the key disputes in this case centers around the manner in which Anthem determined its membership at the time of demutualization. As an insurance company,

---

[1] According to the Conversion Plan a "statutory member" is any person who is the holder of an "In Force Policy" in accordance with corporate records and an "Eligible Statutory Member" is a person who is a statutory member at the time the Conversion Plan was adopted and at the time it becomes effective and who has not had a lapse of coverage during the intervening period.

Anthem Insurance was the end result of several mergers and acquisitions. The company history began with a merger of two Indiana mutual insurance companies which resulted in a company known as Associated Insurance Companies, Inc. ("Associated"). Associated's by-laws provided that its membership would be comprised solely by individuals, regardless of whether they held personal policies or were enrolled in a group plan. Prior to changing its name to Anthem Insurance in 1995, Associated merged with a Kentucky mutual insurance company, Southeastern Mutual Insurance Company and an Ohio mutual insurance company, Community Mutual Insurance Company ("CMIC"), both of which had by-laws which defined their memberships as being comprised of individuals who were insured under individual insurance policies and those entities or groups as a whole that had purchased group policies, not the employees or individuals who were the insured persons under those group polices.

In order to protect the rights of those entities which had obtained membership through purchase of the group policies from the Kentucky and Ohio mutual companies, a "grandfather" clause was placed in the merger documents which allowed the group members of those companies to become members of Associated and remained members of Associated so long as their insurance policies or health care benefits contracts remained in effect or were renewed, amended, or replaced without a lapse in coverage. New group customers in Kentucky or Ohio that entered into group contracts with Associated for the first time after the merger did not become members. Instead, as

required by Associated's by-laws, the individual enrollees under those group policies became the members of Associated.

After those two mergers, Associated changed its name to Anthem Insurance and in 1997 it merged with Blue Cross & Blue Shield of Connecticut, Inc. ("BCBS Connecticut"), a Connecticut mutual insurance company whose by-laws defined its membership in the same manner as the merged Kentucky and Ohio companies had defined their membership, including in the case of group polices the "group as a whole" being recognized as a member as opposed to each individual insured under the group policy. Thus, as with the prior mergers, it was necessary to preserve the rights of the BCBS Connecticut "group as a whole" members by having them become members of Anthem Insurance and remain members so long as the group insurance policies or health care benefits contracts remained in effect or were renewed, amended, or replaced without a lapse in coverage.

Thus, by the time of Anthem Insurance's demutualization in 2001, it had many different types of members, including (I) grandfathered groups in Kentucky, Ohio, and Connecticut, (ii) individuals insured under group policies in Kentucky, Ohio, and Connecticut that were issued to new groups after the Kentucky, Ohio, and Connecticut mergers took place, (iii) individuals insured under individual insurance policies in Kentucky, Ohio, and Connecticut, (iv) and individuals insured under group and individual policies in Indiana. Jeffrey Jorling, the named class representative in this case, obtained

his membership interest in Anthem Insurance when he purchased an individual policy in 1997, after the merger with CMIC but prior to the company's merger with BCBS Connecticut.

As a part of the demutualization process, and in accordance with the Conversion Plan, Anthem Insurance divided its value (also referred to as "surplus" in statutes and case law) into a fixed number of shares and then allocated those shares among its members according to their contribution to the company value. A member's contribution to value was based on a formula which took into account the size and type of policy involved. There were approximately 100 million of these "value" shares distributed among approximately 1 million policyholders deemed eligible under the Plan. The Conversion Plan called for those eligible members with the least number of these allocated value shares to be paid cash first, assuming they had not made a stock election, and if and when the cash raised from the IPO ran out those who had yet to receive cash would be given stock instead.

After the IPO in late 2001, approximately 75% of the policyholders, possessing approximately 52% of the value shares received a cash distribution, which was tied to the IPO price, totaling near $2 billion. Approximately 25% the policyholders, who had been assigned approximately 48% of the value shares, elected to receive what amounted to approximately 48 million shares of stock in the new company as their demutualization compensation. Included among the stock recipients were over 10,000 employers in Ohio

and Connecticut that held group health insurance policies covering their active and retired employees and their dependents. With respect to group policies covering grandfathered groups in Ohio and Connecticut, Anthem Insurance distributed demutualization compensation only to the employers and paid none to any of the employees who were insured under the group policies. By contrast, for employers with group health policies on their employees in Indiana, Anthem Insurance distributed demutualization compensation only to the covered employees and paid none to any of the Indiana employers.

In August 2005, a putative class action was filed in the United States District Court for the Northern District of Ohio against Anthem Inc. and others involved in the demutualization on behalf of those former policyholders of Anthem Insurance who had received cash for their interests in the mutual company. That lawsuit alleged that the class members received inaccurate tax advice in connection with the demutualization, had their interests diluted when Anthem over-allocated compensation to certain member groups and had their interests further diluted when the IPO price was deliberately kept low. The case was transferred from Ohio to this district, and is currently pending before the Court as *Ormond v. Anthem, Inc.*, 1:05-cv-1908-TWP-TAB.

After amendments to the complaint and successive rounds of pretrial motions and rulings, including a ruling that barred an amendment to the *Ormond* complaint which would have added a subclass consisting of former policyholders who accepted stock in

return for their interests in the mutual company, Judge David Hamilton[2] certified a class in the *Ormond* case as follows:

> All former members of Anthem Insurance residing in Ohio, Indiana, Kentucky and Connecticut who received cash compensation in connection with the demutualization of Anthem Insurance on November 2, 2001, and the communities comprised of them and their spouses, if any, excluding:
>
>> (I) all employers located in Ohio and Connecticut that maintained Anthem group health insurance policies on their respective employees and retirees and that received demutualization compensation (the "Grandfathered Groups"); (ii) Defendants, their predecessors and successors in interest; (iii) the officers and directors of Defendants, their predecessors and successors; (iv) counsel of record in this action and their respective parents, spouses and children; and (v) judicial officers who enter an order in this action, and their respective parents, spouses and children.

In order to accommodate the defendants assertion of a defense arising out of the Employee Retirement Income Security Act of 1974 ("ERISA"), a subclass consisting of those class members who received compensation due to their participation in ERISA governed employee benefit plans was also certified.

Excluded from participation as a class member in the *Ormond* lawsuit, Jeffrey Jorling filed the lawsuit at bar on behalf of himself and other policyholders who elected to receive stock as compensation for their interests in the mutual company. Jorling asserts claims sounding in breach of contract, breach of fiduciary duty and negligence, arising out of an alleged under-allocation of shares and dilution of interests, similar to the

---

[2] Judge Hamilton was subsequently appointed to the Court of Appeals for the Seventh Circuit and the *Ormond* matter is now pending before this judge.

allegations of the *Ormond* class. His motion to certify a class and for appointment of class counsel is what is before the court for consideration now. Jorling seeks appointment of the same class counsel as were appointed in *Ormond* and a class defined as follows:

> All former mutual members of Anthem Insurance who received shares of Anthem common stock as compensation for the extinguishment of their mutual membership interests in connection with the demutualization of Anthem Insurance, and the communities comprised of them and their spouses, if any, but excluding:
>
> > (I) Anthem and Anthem Insurance, and each of them, and their respective successors and assigns; (ii) the executive officers and directors of Anthem and Anthem Insurance, together with their predecessors and successors, and their respective parents, spouses and children; (iii) all group contract holders of Anthem Insurance (usually employers and sometimes referred to as the "Grandfathered Groups"); (iv) those former mutual members who received only the fixed component (set at 21 shares) of the demutualization compensation; (v) counsel of record in this action and their respective parents, spouses and children; and (vi) any judicial officer who enters an order in this action, and their respective parents, spouses and children.

## DISCUSSION

Class certification is dependent upon whether the requirements of Federal Rule of Civil Procedure 23 are met. All four of the requirements of Rule 23(a) must be satisfied as well as at least one of the subparts of Rule 23(b). *Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir. 2008).

*1. Requirements of Rule 23(a)*

The four familiar requirements of Rule 23(a) are: numerosity, commonality,

typicality and adequacy of representation. Defendants in this case take issue only with what they claim to be a lack of typicality.

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir.2006)(citations omitted).

The class which Plaintiff seeks to represent includes individuals whose interest in the mutual company resulted from their being insured under group plans which were subject to ERISA. Defendant has asserted as its Sixteenth Defense that: "ERISA preempts the common law claims of putative class members whose membership rights in Anthem Insurance were derived from their participation in employee benefit plans governed by ERISA." Because Mr. Jorling did not obtain his membership interest through such a group plan, Defendants maintain that Mr. Jorling's claim is not typical of the numerous putative class members who were group plan participants and may be subject to an ERISA defense.

Defendant's also argue that Jorling is not similarly situated to class members who could pursue the breach of contract claims in Counts Two and Three of the complaint, which are premised on a third-party beneficiary theory. Though they first maintain that Jorling and the entire class lack standing to assert any third-party beneficiary claim under

either of the two agreements at issue, Defendants go on to maintain that even if some class members might be third-party beneficiaries of the agreements, Jorling is clearly not and there is no named representative of the class who could have a third-party beneficiary interest to pursue such a claim. All of this, according to Defendants, spoils typicality.

The Seventh Circuit has pointed out that arguments which reference a plaintiff's standing to act as a class representative are confusing and conflate the Article III requirements for standing to sue with the class certification inquiry to be made pursuant to Rule 23. *Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008). Jorling has Article III standing to sue Defendants because he clearly alleges an injury traceable to the challenged conduct of Defendants which could be redressed by a favorable decision. *Id*. The fact that he may not be able to pursue one of the several theories of recovery he has asserted does not leave him without Article III standing to sue the Defendants. *Id*. However, it may leave him short of his burden with respect to class certification, for there should be at least one class representative who possesses any claim being advanced on behalf of absent class members, if for no other reason than to assure vigorous prosecution of each claim. *See Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 408 (E.D.Wis. 2002); *Gilmore v. Southwestern Bell Mobile Systems, L.L.C..*, 2002 WL 548704 (N.D. Ill. April 8, 2002).

While Plaintiff offers substantive replies to Defendants' arguments against class certification, he also suggests that if the court is at all concerned with regard to whether

he has met his burden on the requirements of Rule 23, the court should simply authorize class notice and allow counsel for Plaintiff to vet potential additional class representatives who might be better suited to pursue a particular claim being asserted in the Complaint or to litigate the defenses raised by Defendants. That argument is a nonstarter. The court will not ignore the clear intent of the 2003 amendments to Rule 23 to do away with any perceived authority of the court to conditionally certify a class. *Summary of the Report of the Judicial Conference Committee on Rules of Practice and Procedure*, September 2002, p.10; *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:6 (6th ed. 2010). The case cited by Plaintiff as authority for the proposition that a court can send out class notice as part of an attempt to locate an adequate class representative was decided prior to the 2003 amendments to Rule 23 and, equally important, represented a situation where a class had already been certified. *Barkman v. Wabash,* 1988 WL 5039 (N.D.Ill. Jan. 20, 1988). Regardless of any expectation or predisposition that a court may have regarding the suitability of a case for class treatment, it seems axiomatic that no class should be certified until there is an adequate representative to pursue each of the claims raised in the complaint.

That leaves Plaintiff to respond to Defendants' argument that his claims are atypical and he is an inadequate representative because he would not be subject to an ERISA preemption defense and he is not a third-party beneficiary to the merger contracts which form the basis of the claims asserted in Counts Two and Three. His response is

-11-

that while he would not be subject to an ERISA preemption defense, the defense has no merit and Defendants should be estopped from raising it because they successfully sought an exemption from the Department of Labor with respect to the application of certain ERISA provisions during the demutualization process. With regard to whether or not Jorling may assert third-party beneficiary claims against Defendants on the basis of the two merger agreements entered into by Anthem, Plaintiff argues that being a third-party beneficiary under one of the merger agreements is sufficient to allow him to be an adequate representative to pursue both claims because the relevant language in both is nearly identical. Defendants claim Jorling is not a third-party beneficiary to either agreement and that its ERISA preemption defense is valid.

The Court is left in desultory position. A motion for class certification should not become a vehicle for determining the merits of any claim or defense. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974). Yet, the Seventh Circuit has made it clear that a district court should not avoid resolving "factual and legal disputes that strongly influence the wisdom of class treatment." *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001). When it comes to reaching a conclusion on issues like estoppel and third-party beneficiary status, which are not necessarily fully briefed on a motion to certify a class, we share the same hesitation that Judge Hamilton exhibited in his class certification decision in *Ormond,* when he created a subclass of those class members who would be subject to an ERISA defense rather than reach a conclusion at the

certification stage on whether the defense had merit or had been forfeited by Defendants. However, were the court to consider creating a subclass in this case it would be hamstrung by the lack of any named class representative to lead the subclass other than Mr. Jorling, who is admittedly not subject to the ERISA preemption defense and does not possess a third-party beneficiary claim. It is his lack of a third-party beneficiary claim and, hence, the inability to represent the class with respect to Counts Two and Three that "seals the deal" with respect to the denial of class certification at this time.[3]

In his complaint, Jorling alleges that Anthem wrongly determined that Ohio and Connecticut grandfathered groups were eligible for demutualization compensation.

---

[3]Though having another named Plaintiff that could lead a subclass for purposes of the ERISA defense would provide a welcome option in terms of handling that issue at the certification stage, this judge shares Judge Hamilton's doubts as to the efficacy of any ERISA preemption defense that would leave Plaintiffs without a sufficient remedy if there were true wrongdoing in the demutualization process, especially where no notice to effected policyholders is provided with regard to any right to a plan based administrative challenge to the compensation provided. Furthermore, as noted by Judge Rebecca Pallmeyer in the Northern District of Illinois when faced with a similar argument regarding the assertion of a defense unique to only certain class members destroying typicality:
> A unique defense, however, is merely a factor that informs the court's decision on class certification and need not destroy typicality. *Williams v. Gill*, 572 F.Supp. 509, 518 (N.D.Ill.1983) (citing *J.H. Cohn & Co.*, 628 F.2d at 998-99). Typicality will only be destroyed where the defenses against the named representatives are "likely to usurp a significant portion of the litigant's time and energy," and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it. *Frietsch*, 1994 WL 10114, at *3 (citations omitted). In short, it is "only when a unique defense will consume the merits of a case that a class should not be certified." *Abt v. Mazda Am. Credit, No. 98 C 2931*, 1999 WL 261739, at *3 (N.D.Ill. Apr. 14, 1999) (citing *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D.Ill.1996)).

*Retsky Family Ltd. Partnership v. Price Waterhouse LLP,* 1999 WL 543209 *3 (N.D. Ill. July 23, 1999).

Jorling claims that pursuant to the merger documents and applicable state law, Anthem should have determined that the grandfathered groups' employees and other group insureds at the time of demutualization were the eligible members, rather than the owner of the group policy or the grandfathered groups as a whole, and that had Anthem made such a determination, he and the putative class would have received more shares of stock in the new public company following demutualization. Based on these allegations, Count Two of Plaintiff's Complaint alleges that Defendants breached the merger agreement between Associated and CMIC. Count Three of the Complaint alleges a similar breach of the agreement between Anthem Insurance and BCBS Connecticut. The operative language of both agreements is nearly identical with respect to the effect of the merger on the members of the company merging into Associated or Anthem.

Plaintiffs quote a part of that language in their reply brief as support for the proposition that the merger agreements clearly intended to benefit third-parties. However in so doing they chose to leave out key phrases from the quote. Those key phrases make it clear that the third-parties to whom any benefit is intended, with regard to demutualization, are the former members of CMIC and BCBS Connecticut. Below is the quotation as presented by Plaintiff in his reply brief, but the court has inserted, in bold, the key phrases from both the CMIC and BCBS Connecticut merger agreements where the Plaintiff had substituted ellipses when he set out the quote in his reply brief.

> [E]ach person who is a member **of Community (or) of BCBS CT** shall, by virtue of the Merger and without any action on the part of the **Community**

> **(or) of BCBS CT** Member, receive in exchange for such Member's interest in **Community (or) BCBS CT:** ... rights in the event of liquidation, merger, consolidation, or demutualization [of Anthem] . . . which rights shall reflect and include in full . . . the value of that . . . [person's] interest **in Community (or) BCBS** immediately prior to the Effective Time [of the Merger].

Mr. Jorling never held an interest in either CMIC or BCBS Connecticut, having purchased an individual policy from Anthem after the CMIC merger agreement and before the merger with BCBS Connecticut. Consequently, if the two agreements were meant to benefit the former members of CMIC and BCBS Connecticut as third-parties, he would not fit into either of those groups and would have gained no third-party contractual rights to enforce. The court must add that it is difficult to believe that in choosing where to place the ellipses in that quote, the Plaintiff was not aware that the phrasing (in bold above) which he was leaving out was a key part of a group definition which excludes his membership.

In the end, if the court is to avoid a merits decision on the third-party beneficiary claims or the ERISA preemption defense and estoppel issues until they are raised in a dispositive motion with full briefing, it has no real choice at this point in time but to deny class certification. An examination of whether, as Jorling asserts, the case meets the requirements for certification imposed by Rule 23(b)(3) is unnecessary because all of the requirements of Rule 23(a) have not been met. *See In re Ready-Mixed Concrete Antitrust Litigation,* 261 F.R.D. 154, 168-69 (S.D.Ind. 2009). If changes in the pleadings occur or

additional named parties intervene or are joined, the certification question may be revisited. However, for now, there will be no class certification and Plaintiff's Motion For Class Certification (Doc. #33) is DENIED.

IT IS SO ORDERED. 12/23/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Matthew Thomas Albaugh
BAKER & DANIELS - Indianapolis
matthew.albaugh@bakerd.com

Dennis Paul Barron
dennispbarron@aol.com

Michael F. Becker
BECKER & MISHKIND CO., L.P.A.
mbecker@beckermishkind.com

Peter R. Bisio
HOGAN LOVELLS US LLP
peter.bisio@hoganlovells.com

Todd S Collins
BERGER & MONTAGUE, P.C.
tcollins@bm.net

T. David Copley
KELLER ROHRBACK, L.L.P.
dcopley@kellerrohrback.com

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Craig A. Hoover
HOGAN LOVELLS US LLP
cahoover@hhlaw.com

Peter R. Kahana
BERGER & MONTAGUE, P.C.
pkahana@bm.net

Kevin M. Kimmerling
BAKER & DANIELS - Indianapolis
kevin.kimmerling@bakerd.com

Cari C. Laufenberg
KELLER ROHRBACK L.L.P.
claufenberg@kellerrohrback.com

Adam K. Levin
HOGAN LOVELLS US LLP
aklevin@hhlaw.com

Neil F Mara
BERGER & MONTAGUE, P.C.
nmara@bm.net

H. Laddie Montague Jr
BERGER & MONTAGUE P.C.
hlmontague@bm.net

Anne Kramer Ricchiuto
BAKER & DANIELS - Indianapolis
anne.ricchiuto@bakerd.com

Lynn L. Sarko
KELLER ROHRBACK, L.L.P.
lsarko@kellerrohrback.com

Christopher G. Scanlon
BAKER & DANIELS - Indianapolis
chris.scanlon@bakerd.com

Paul A. Wolfla
BAKER & DANIELS - Indianapolis
paul.wolfla@bakerd.com

Eric Hyman Zagrans
eric@zagrans.com